IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ALONZO B. SLEDGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 2:13-cv-2822-STA-cgc |
| | ) |
| LAW OFFICES OF BUFFALOE & | ) |
| ASSOCIATES, PLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the Motion for Summary Judgment of Defendant Law Offices of Buffaloe & Associates, PLC ("Buffaloe"), filed March 11, 2015. (ECF No. 33). Plaintiff Alonzo Sledge filed a Response in Opposition to the Motion on April 8, 2015 (ECF No. 38), to which Buffaloe filed its Reply on April 22, 2015. (ECF No. 39). For the reasons stated below, Buffaloe's Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

As an initial matter, Sledge failed to respond to Buffaloe's statement of undisputed facts. Local Rule 56.1 required Sledge to respond to each fact set forth by Buffaloe "by either: (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." W.D. Tenn. Civ. R. 56.1(b). A party's "failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment." W.D. Tenn. Civ. R. 56.1(d). Even

1

after Buffaloe pointed out in its Reply that Sledge failed to respond to the statement of material facts, Sledge did not request leave to file a late response. *See* Def.'s Reply 2–3, ECF No. 39. Thus, the Court treats each of Buffaloe's facts as undisputed for purposes of summary judgment.

Sledge alleges that Buffaloe violated the Fair Debt Collection Practices Act ("FDCPA") in connection with the collection of a $409.23 debt assigned to Buffaloe for collection on October 26, 2012. (Def.'s Statement of Undisputed Facts ¶ 5, ECF No. 33-2). In his Complaint, Sledge originally asserted FDCPA violations in connection with a separate debt assigned to Buffaloe for collection on December 21, 2009. (Compl. ¶ 11). Sledge abandoned his claims based on the 2009 debt in his Response to Buffaloe's Motion for Summary Judgment.[1] (Pl.'s Response in Opp'n 14, ECF No. 38-1). Therefore, the only claims before the Court are those arising from facts related to the $409.23 debt, which Buffaloe attempted to collect in late 2012 and early 2013.

After LVNV Funds, LLC assigned the debt to Buffaloe for collection, Buffaloe initiated collection by sending Sledge a 30-day demand letter on November 2, 2012. (Def.'s Facts ¶ 6–7; Demand Letter, Ex. D to Def.'s Mem. in Supp. Mot. Summ. J., ECF No. 33-1, PageID 233). The letter contained the amount of the debt, and Sledge does not claim that this letter constituted a violation of the FDCPA. According to an account record submitted by Buffaloe, it first called Sledge at his home phone number on November 20, 2012. By the Court's count, from that date

---

[1] Sledge's only claims based on the 2009 debt alleged that Buffaloe did not cease communication after receiving a cease-and-desist letter on February 2, 2010, a violation of 15 U.S.C. § 1692c(c). Without addressing whether this specific claim is time-barred, the Court notes that it is undisputed that Buffaloe did cease communication. Moreover, Sledge "withdr[ew] his claims under 15 U.S.C. § 1692c(c)" in his Response. Pl.'s Response in Opp'n 14, ECF No. 38-1.

2

until March 27, 2013, various Buffaloe representatives called Sledge's home phone number 32 times.[2] (*See* Paperless File, Ex. C to Def.'s Mot. Summ. J., ECF No. 33-1, PageID 222–31).

Only four of these calls resulted in a Buffaloe representative having a conversation with someone who answered the telephone. (Def.'s Facts ¶ 18; Dep. of Alonzo Sledge 46:1–3, ECF No. 33-1, PageID 284). During a February 27, 2013 phone call, Buffaloe was told to "lose the number," but the individual answering Sledge's phone hung up "before Buffaloe could verify the name and telephone number of the debtor to take the number off Buffaloe's system." (Def.'s Facts ¶ 9). During a March 6, 2013 phone call, Sledge told Buffaloe that he had previously informed Buffaloe that he did not owe them any money and that Buffaloe should stop calling him. (*Id.* ¶ 10). Buffaloe called Sledge seven more times before receiving a cease-and-desist letter on March 29, 2013, from Sledge's counsel. (*Id.* ¶ 13). One of those calls resulted in a voice mail left on Sledge's phone on March 20, 2013. (*See* Paperless File, PageID 228–29). After receiving the cease-and-desist letter, Buffaloe stopped all communication with Sledge. (Def.'s Facts ¶ 14).

Before receiving the cease-and-desist letter, Buffaloe also sent Sledge a "Special Offer" letter on February 8, 2013. (Def.'s Facts ¶ 14). The letter makes a "special offer . . . to resolve [Sledge's] account at a tremendous savings." (Special Offer, ECF No. 33-1, PageID 235). In the

---

[2] Joel Vallejo, an attorney with Buffaloe, testified that "telephone calls can be identified on the paperless notes by the phrase "eIVR Result Import." Aff. of Joel Vallejo ¶ 10, Ex. A to Def.'s Mem. in Supp. Mot. Summ. J., ECF No. 33-1. There are 23 entries designated "eIVR Result Import" in the paperless notes. Nevertheless, there are other dated entries with separate designations: for instance, "Tel Home Phone/No Answer" and "Telephone Demand Residence MOP would not take message." Buffaloe's assertion that it only had a phone conversation with someone at Sledge's residence 4 times points the Court to dates without "eIVR Result Import" references. Thus, for purposes of this Motion and without clarification from Buffaloe, the Court assumes from the evidence before it that the 9 "Tel" designations also represent calls to Sledge's residence.

subject line, below Sledge's name, the letter reads "Date of Judgment:" with no date after the colon, followed by Buffaloe's file number for Sledge. The letter, on Buffaloe's letterhead, states the following:

> Sir/Madame:
>
> **SPECIAL OFFER. ACT NOW TO RECEIVE THE BEST OFFFER POSSIBLE!!**
>
> As you are aware, this office has been retained to collect the above-referenced claim against you. Our client is currently offering a Tax Season settlement offer on your account. Resurgent Capital Services, LP is making this special offer for you to resolve your account at a tremendous savings.
>
> Your account can be settled for a lump sum payment of 50% of the current balance if paid before March 31st, 2013 at 3:00 p.m.
>
> **YOU MUST CONTACT OUR OFFICE TO RECEIVE A QUOTED SETTLEMENT AMOUNT.**
>
> Act now to resolve this matter and receive the best discount. If further collection efforts continue, you may run the risk of additional charges or interest accruing.
>
> This is a settlement communication and will expire as indicated. If you have an attorney and have not yet advised this office or Resurgent Capital Services, LP of his/her representation of you, please forward this communication to your attorney immediately.
>
> Please act quickly to take advantage of this opportunity as certain legal remedies may have to be enforced before the expiration of this offer. Resurgent Capital Services, LP is in no way waiving its legal rights by this offer.
>
> . . . .
>
> If you wish to discuss possible settlement of this account, please contact my office immediately.
>
> Very truly yours,
>
> Buffaloe & Associates, PLC.

(*Id.*). The letter also contains a final "Note" that "[t]his an attempt to collect a debt and any further information obtained will be used for that purpose. This communication is from a debt collector." (*Id.*). Sledge claims that Buffaloe's phone calls and its Special Offer letter constitute violations of the FDCPA.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party,[4] and it "may not make credibility determinations or weigh the evidence."[5] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[6] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[7] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[8] When determining if summary judgment is

---

[3] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[6] *Celotex*, 477 U.S. at 324.

[7] *Matsushita*, 475 U.S. at 586.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[9] In this Circuit, the nonmoving party must "put up or shut up" as to the critical issues of the claim.[10] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[11]

## DISCUSSION

Congress enacted the FDCPA "to eliminate abuse debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."[12] When courts interpret the FDCPA, they should "begin with the language of the statute itself."[13] The parties do not dispute that Buffaloe is a debt collector or that the debt allegedly owed was a consumer debt.

Sledge makes three claims under the FDCPA. First, he alleges that Buffaloe violated 15 U.S.C. § 1692d and d(5) because its conduct harassed, oppressed, or abused him. This claim includes Sledge's allegation that Buffaloe "caus[ed] a telephone to ring . . . repeatedly or

---

[9] *Id.* at 251–52.

[10] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[11] *Celotex*, 477 U.S. at 322.

[12] 15 U.S.C. § 1692(e).

[13] *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999).

6

continuously with intent to annoy, abuse, or harass" him.[14]  Second, Sledge claims that the Special Offer letter violated § 1692e because it contained "false, deceptive, or misleading representation[s]."[15]  Specifically, Sledge claims that the letter contained "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken,"[16] in violation of § 1692e(5), and that Buffaloe, through the letter, used a "false representation or deceptive means to collect or attempt to collect" the debt.[17]  Third, Sledge generally claims that Buffaloe violated the FDCPA's catchall provision, § 1692f, by using "unfair or unconscionable means to collect or attempt to collect" the debt.[18]

**I. 15 U.S.C. § 1692d, d(5) – Harassment and Abuse**

The FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."[19]  More specifically, "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" constitutes a violation.[20]  Sledge claims Buffaloe violated these provisions by consistently calling his phone, even after he told Buffaloe that he did not owe any money and requested Buffaloe to stop calling.  Buffaloe admits that it called Sledge several times, that

---

[14] *See* 15 U.S.C. § 1692d, d(5).  The lead-up language of § 1692d is of general application, while § 1692d(5) is a specific example of a violation of the section.

[15] *Id.* § 1692e.

[16] *Id.* § 1692e(5).

[17] *Id.* § 1692e(10).

[18] *Id.* § 1692f.

[19] *Id.* § 1692d.

[20] *Id.* § 1692d(5).

7

Sledge told Buffaloe he did not owe it any money, and that Sledge asked Buffaloe to stop calling. But it argues that it did not violate § 1692d(5) since it only continued to call because Sledge hung up before the representative could verify his number to take it off of their list.[21]

The Sixth Circuit held that "although the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, . . . Congress has indicated its desire for the courts to structure the confines of § 1692d.'"[22] Courts may dismiss claims under § 1962d "as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor."[23] As to § 1692d(5), courts often assess the "volume, frequency, pattern, and substance" of calls to determine whether a debt collector had the intent to annoy, abuse, or harass.[24]

The evidence before the Court shows that Buffalo called Sledge's number 32 times in 127 days. The Plaintiff does not dispute that Buffaloe never called Sledge at an inconvenient time: it made all of its calls between 8:30 a.m. and 4:00 p.m. Buffaloe never called Sledge more than one time per day, and it only actually spoke to Sledge two or three times. He makes no allegation that the content of the calls was oppressive under the general prohibitions of § 1692d. Instead, his claim is based entirely on the number of phone calls and Buffaloe's continued calling after Sledge asked it to stop but before Buffaloe could verify his information. These are allegations of a violation of § 1692d(5), but the factual allegations do not create a triable issue.

---

[21] Def.'s Mem. in Supp. Mot. Summ. J. 11, ECF No. 33-1.

[22] *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (alterations in original) (quoting *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985)).

[23] *Id.*

[24] *See Smith v. Accounts Research, Inc.*, No. 3:10-CV-213, 2012 U.S. Dist. LEXIS 11317, at * 15 (E.D. Tenn. Jan. 31, 2012); *see also Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847, 852 (W.D. Tenn. 2010) (analyzing claims at the motion-to-dismiss stage).

First, Sledge makes no allegation of "coercion, scare tactics, or fraud."[25] Furthermore, "[t]he pattern and frequency of calls may violate the statute," but "the pattern and frequency does not necessarily constitute a violation."[26] This is especially true if phone calls frequently go unanswered, which indicates a difficulty in reaching the debtor rather than intent to harass.[27] Here, in almost four months of attempting to contact Sledge, Buffaloe representatives only spoke with *someone* at the Sledge's residence 4 times.[28] Sledge recalled only 3 conversations with a Buffaloe representative, out of a possible 32 attempts. These facts reflect the same difficulty in reaching a debtor that other courts in this circuit have concluded indicates an absence of harassment.[29] Buffaloe never caused the phone to ring in a successive manner after unsuccessful attempts to reach Sledge. It never called at inconvenient times, left only one message, and ceased calling when it received a cease-and-desist letter. Although Sledge told the Buffaloe representatives that he did not owe any money, he never offered any explanation why, instead hanging up immediately. Furthermore, while the calls were unwelcome, "that is simply

---

[25] *Harvey,* 453 F.3d at 330.

[26] *Tye v. LJ Ross Assocs.*, No. 11-15195, 2013 U.S. Dist. LEXIS 14490, at *10 (E.D. Mich. Feb. 4, 2013).

[27] *See id.* at *11 (citing *Saltzman v. I.C. Sys.*, No. 09-10096, 2009 U.S. Dist. LEXIS 90681, at *21 (E.D. Mich. Sept. 30, 2009)); *see also Hicks v. Am.'s Recovery Solutions, LLC*, 816 F. Supp. 2d 509, 515 (N.D. Ohio 2011).

[28] Def.'s Statement of Undisputed Facts ¶ 18, ECF No. 33-2.

[29] *See Tye*, 2013 U.S. Dist. LEXIS 14490, at *10; *Saltzman*, 2009 U.S. Dist. LEXIS 90681, at *21; *Millsap v. CCB Credit Servs.*, No. 07-11915, 2008 U.S. Dist. LEXIS 110149, at *24 (E.D. Mich. Sept. 30, 2008) ("Finally, the significant disparity between the number of calls placed and the number of actual conversations between the parties suggests the difficulty of reaching Plaintiff, rather than an intent to harass . . . ."). The Court finds the reasoning of these opinions persuasive.

insufficient to establish a violation of the FDCPA."[30] Under these specific circumstances, no reasonable juror could find Buffaloe's conduct demonstrated intent to annoy, abuse, or harass. Buffaloe reasonably attempted to collect a debt.

Sledge's only response is that on at least two occasions, he asked Buffaloe to cease calling. He did not dispute the amount of the debt, nor did he communicate any further. Instead, he told the representative that he did not owe anything to Buffaloe, told them to stop calling, and hung up immediately. The FDCPA, however, "requires a debt collector to honor only a consumer's written request to cease further communications."[31] Therefore, as several courts have held, a "plaintiff's oral request to defendant to cease calling [is] legally ineffectual under the Act."[32] In 2009, Buffaloe attempted to collect a separate debt from Sledge, but when Sledge sent Buffaloe a cease-and-desist letter, Buffaloe stopped all collection efforts. Sledge knew that a written request would have required Buffaloe to cease communication, but instead of taking action that he knew was legally sufficient, he would only tell Buffaloe that he did not owe the debt and then hang up. This, combined with Buffaloe's undisputed statement that it needed some sort of verification to take Sledge off its call list and Buffaloe's difficulty reaching Sledge,[33] leads to the conclusion that Buffaloe did not intend to harass or annoy.

Sledge also mentions, very briefly, that in the second connected call, a Buffaloe representative told him that Buffaloe was sending correspondence to his former employer, the

---

[30] *Durthaler v. Accounts Receivable*, 854 F. Supp. 2d 485, 492 (S.D. Ohio 2012) (granting summary judgment where defendant debt-collector called the plaintiff debtor 32 times).

[31] *Scheiner v. Portfolio Rcovery Assocs.*, No. 12-518-JGW, 2013 U.S. Dist. LEXIS 184624, at *19 (S.D. Ohio Nov. 5, 2013) (citing 15 U.S.C. § 1692c(c)).

[32] *Id.* at *19–20 (collecting cases).

[33] Def.'s Statement of Undisputed Facts ¶ 9–10.

Internal Revenue Service. Sledge testified, "Why they told me that, I don't know. I guess it was to communicate a threat to me that they have contacted my employer and, you know, now I'm—you know, but I wasn't working then, so I'm not sure—they didn't know that of course."[34] But he has not argued in his response why this statement—if made—would imply the intent to harass. He does not dispute that he no longer worked for the IRS, nor has he explained the context in which the conversation took place. That the representative mentioned his former employer is insufficient to create a question of harassment for a jury. Finally, Sledge states that a Buffaloe representative told him that Buffaloe was a "private collector."[35] Buffaloe disputes that a representative made this statement but claims that if the statement was made, it is not harassing conduct. The Court agrees with Buffaloe. How Buffaloe's indication that it was a "private collector" could be harassment is unclear to the Court, and even the least sophisticated consumer could not infer that such a statement was harassing. Taken as a whole, the calls and the content of those calls do not amount to conduct prohibited by the provisions of the FDCPA.

**II. 15 U.S.C. § 1692e, e(5), and e(10) – False, Deceptive, or Misleading Methods**

Sledge argues that the Special Offer letter, reproduced above, made three representations or omissions which were false, deceptive, or misleading. First, Sledge points to the letter's reference of a "Date of Judgment"—with no date after the colon—in the subject line. Second, Sledge claims that the Special Offer letter's omission of the amount of debt violated 15 U.S.C. § 1692e(5) And third, Sledge alleges that the sentence "Please act quickly to take advantage of this opportunity as certain legal remedies may have to be enforced before the expiration of this offer"

---

[34] Dep. of Alonzo Sledge 50:15–19, ECF No. 38-2.

[35] *Id.* at 52:15–18.

11

was a threat to take action that was not intended to be taken—a violation of 15 U.S.C. § 1692e(10).[36]

In determining "whether a debt collector's practice is deceptive within the meaning of the Act, courts apply an objective test based on the understanding of the 'least sophisticated consumer.'"[37] The Special Offer letter is clearly labeled a "special offer," not a demand. It indicates that if the Plaintiff were to pay 50% of the total debt before a certain date, the debt would be settled. That the letter contains the words "Date of Judgment" does not create a triable issue. The form letter, addressed to "Sir/Madame," includes no actual date of judgment after the colon. Standing alone, this is not deceptive under the FDCPA.

Second, Sledge argues that Buffaloe's failure to include the amount of the debt in the Special Offer letter was an omission to disclose material information—and therefore, misleading. Sledge points to generic case law about omissions but fails to set forth any case in which a court required that every correspondence with a debtor must include the amount of the debt. It is undisputed that the original notice of debt, dated November 2, 2012, included the amount of the debt. The least sophisticated consumer could not find an omission of the amount of debt in a later correspondence "false, deceptive, or misleading." Buffaloe had no duty—in an offer letter—to state the amount of debt. The letter encouraged Sledge to contact Buffaloe to receive a quoted settlement; it did not misstate or imply a different amount than that provided in the original notice of debt.

Finally, Buffaloe encouraged Sledge to "act quickly to take advantage of this opportunity as certain legal remedies may have to be enforced before the expiration of this offer." It then

---

[36] *See* Special Offer Letter, ECF No. 33-1, PageID 235.

[37] *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 400 (6th Cir. 1998)).

states that no party waives legal rights by extending the offer. In context, even the least sophisticated consumer could not interpret this as a threat to take legal action that Buffaloe did not have the right or intention to take. The letter reserves the debt collector's and its client's rights and indicates that they have the right to pursue legal proceedings to collect the debt. Sledge does not argue that Buffaloe could not take the legal action, but rather that it did not intend to do so. But it is undisputed that "Buffaloe would have taken legal action against Plaintiff if it believed it would have been beneficial or necessary to collect the debt on behalf of its client and if Buffaloe's client had directed Buffaloe to file suit."[38] Furthermore, nowhere does the letter make legal action imminent or contingent upon Sledge's acceptance or denial of the offer. Thus, Buffaloe's statement that it might enforce legal remedies despite its special offer was not an illegal threat to take action.

### III. 15 U.S.C. § 1692f – Unfair or Unconscionable Means

Sledge argues that there "are factual disputes as to whether Defendant's efforts to collect this alleged debt constituted unfair and/or unconscionable means."[39] He does not allege that Buffaloe violated any of § 1692f's specific examples of prohibited conduct but summarily states that a question of fact remains as to whether Buffaloe's means were unfair or unconscionable. For the same reasons described above, Buffaloe's means—calling and sending a Special Offer letter—were not unfair or unconscionable. Sledge's generalized claims refer to the same facts alleging illegal activity referred to above. Thus, his claims fail.

---

[38] Def.'s Statement of Undisputed Facts ¶ 15.

[39] Pl.'s Response in Opp'n 14, ECF No. 38-1

## **CONCLUSION**

Buffaloe's 32 calls over a 4-month period resulted in only 4 conversations with Sledge or a person answering his home phone. Buffaloe did not intend to annoy or harass, but continued to call Sledge's number when it was unsuccessful in reaching him and unsuccessful in eliciting information to take Sledge off of its call list. Furthermore, the Special Offer letter did not contain deceptive, false, or misleading information, even to the least sophisticated consumer. Thus, no reasonable juror could infer that Buffaloe's conduct violated the general or specific prohibitions of the FDCPA. Buffaloe's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

                                                  **s/ S. Thomas Anderson**
                                                  HON. S. THOMAS ANDERSON
                                                  UNITED STATES DISTRICT COURT

                                                  Date: May 26, 2015.